# EXHIBIT A

**22CG-CC00164**

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

CIRCUIT COURT OF CAPE GIRARDEAU COUNTY
32nd JUDICIAL CIRCUIT
STATE OF MISSOURI

| | | |
|---|---|---|
| RAYMOND SCOTT ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| THE PROCTER & GAMBLE COMPANY, | ) | |
| | ) | Division No. |
| and | ) | |
| | ) | |
| THE PROCTER & GAMBLE PAPER | ) | |
| PRODUCTS COMPANY, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| and | ) | |
| | ) | |
| HEIDI BURNETT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES EFTINK, | ) | |
| | ) | |
| BRANDON BADER, | ) | |
| | ) | |
| Defendants. | ) | |

**PETITION**

COMES NOW plaintiff, through counsel, and for his causes of action against defendants

The Procter & Gamble Company, The Procter & Gamble Paper Products Company,  Heidi

Burnett, James Eftink and Brandon Bader states as follows:

**NATURE OF THE ACTION**

In this action, plaintiff alleges gender discrimination and retaliation under the Missouri

Human Rights Act (MHRA) and intentional infliction of emotional distress under Missouri law.

1

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Raymond Scott Elliott (Elliott) is a male citizen.  At all times relevant here, Elliott was employed by Defendants P&G and P&G Paper and resided in Bollinger County.

2.     Defendant The Procter & Gamble Company (P&G), is a foreign corporation doing business in Cape Girardeau County.

3.     P&G is an employer, as defined by the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 (7), because at all relevant times P&G employed six (6) or more persons in the State of Missouri.  P & G is an employer with more than 500 employees.

4.     Defendant The Procter & Gamble Paper Products Company (P&G Paper), is a foreign corporation doing business in Cape Girardeau County.

5.     P&G Paper is an employer, as defined by the MHRA, Mo. Rev. Stat. § 213.010 (7), because at all relevant times P&G employed six (6) or more persons in the State of Missouri. P & G is an employer with more than 500 employees.

6.     Defendant Heidi Burnett (Burnett) is a female citizen.  At all times relevant here, Burnett was employed by Defendants P&G and P&G Paper and, on information and belief, resided in Cape Girardeau County, Mo.

7.     Defendant James Eftink (Eftink) is a male citizen.  At all times relevant here, Eftink was employed by Defendants P&G and P&G Paper and, on information and belief, resided in Missouri.

8.     Defendant Brandon Bader (Bader) is a male citizen.  At all times relevant here, Eftink was employed by Defendants P&G and P&G Paper and, on information and belief, resided in Missouri.

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

9.      Defendants' unlawful employment practices complained of herein occurred in Cape Girardeau County, Missouri.  Accordingly, venue is appropriate in the Thirty-Second Judicial Circuit.

10.     Plaintiff complains herein of employment practices that are illegal under Missouri law, specifically under the Missouri Human Rights Act, as amended, R.S.Mo. §105.055, and of intentional infliction of emotional distress by all defendants.

11.     Plaintiff dual-filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) on July 29, 2021, complaining of gender discrimination, including harassment, and of being retaliated against for complaining about the harassment.

12.     Plaintiff received his Notice of Termination of Proceedings (Notice) from the MCHR on June 2, 2022.

13.     Plaintiff filed this action within ninety (90) days of receipt of his Notice.

## The Particulars

14.     Elliott was employed by the P&G Defendants from November 17, 1997 to July 5, 2021. At the time he ceased employment, and for approximately 15 years before, Elliott was a Technician for the P&G Defendants.

15.     Elliott is homosexual.  Elliott did not share this fact at work, but his appearance and behavior contradicted the stereotypes of maleness held by his employer and by defendants Burnett, Bader and Efink.

16.     During his employment, Elliott performed the duties and responsibilities of his job in a satisfactory manner.

3

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

17.     Burnett is the manager over the Technicians.  Prior to 2021, on information and belief, Burnett was not aware that Elliott was homosexual and she treated Elliott like the other employees under her supervision.

18.     In or around January 2021, Eftink learned through his mother-in-law, who worked with Elliott's daughter, that Elliott is homosexual.  Eftink and Bader transferred to the team Elliott worked in at around the same time.

19.     On information and belief, at some point in 2021, Eftink shared with Bader and Burnett the information that Elliott is homosexual.

20.     Zachary Carlyle was employed by the P&G Defendants from January 27, 2020 to October 7, 2020 as a Technician in the same department and on the same shift as Elliott.

21.     The P&G Defendants provide Technicians with one week of classroom training and approximately one year of on-the-job training.

22.     Shortly after Carlyle began working for the P&G Defendants, his Team Leader Brandon Bader told him that Elliott was gay, so Carlyle should beware of him.

23.     Elliott was an excellent Technician and was willing to train Carlyle, so Carlyle observed his work closely, often openly following Elliott around.

24.     Later, on information and belief, Carlyle's manager, Burnett, decided Carlyle was gay.

25.     Carlyle was subjected to "secret" discipline, including allegedly being placed on a Last Chance Agreement and allegedly being placed "off-track" for his probationary period. Neither of these issues were ever communicated to Carlyle during his employment with the P&G Defendants.

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

26.     Carlyle experienced similar growing pains in the position as other probationary employees did, before and after his tenure.  However, Burnett reacted to Carlyle's growing pains in a much harsher manner than she did to those of other probationary (and non-probationary) employees who she did not perceive to be homosexual.  For example,

a.     Burnett disciplined Carlyle for sleeping on a break, despite admitting that employees are permitted to sleep on breaks.  Other employees Burnett did not perceive as homosexual who were caught sleeping even on *non*-break times were not disciplined in any manner.

b.     Burnett disciplined Carlyle for excessive use of his cell phone while he was monitoring in the Fiber Recovery Control Room.  Team Leader Bader modeled this behavior for Carlyle and was never disciplined for it.  Burnett did not perceive Bader as homosexual.  Thereafter, Carlyle was still *required* to use his cell phone for business purposes, such as responding to texts from manager Burnett, taking photographs to identify potential problems for maintenance, and using the flashlight application to see into corners.

c.     Carlyle bumped a vehicle into one of the self-driving (robotic) trucks that run a designated path.  She disciplined Carlyle for this and cited it as a primary reason for his discharge.  It is not unusual for long-term employees to run into one of the self-driving trucks and not get disciplined; Burnett did not perceive them as homosexual.

d.     Burnett disciplined Carlyle for tardiness, although he was only tardy once, and he called in advance that time.  At least one long-term employee with chronic tardiness was not disciplined for tardiness; Burnett did not perceive this employee as homosexual.

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

e.      Carlyle was purportedly fired on October 7, 2020 for a timecard error of one hour that occurred in July 2020.  Other employees Burnett did not perceive as homosexual were merely docked if a timecard error occurred and had the mistake explained to them; they were not disciplined at all.

27.     Burnett was the decision-maker for discharging Carlyle.

28.     Burnett personally fired Carlyle on October 7, 2021.

29.     Moments after firing Carlyle, Burnett observed Carlyle and Elliott speaking on the parking lot of the P&G Defendants.

30.     On October 9, 2021, Elliott's first shift after Carlyle's discharge, Burnett immediately called him into a conference room.  She then began yelling at Elliott about Carlyle, telling him she saw him walk to the gate with Carlyle on October 7, and asking him repeatedly "just what kind of relationship" he had with Carlyle anyway.

31.     Thereafter, Burnett started disciplining Elliott for conduct that was previously acceptable, and was still acceptable to her from people whom she did not believe to be homosexual.

32.     In late 2020, Burnett hired Tyree Moore to replace Carlyle.  Moore stated in front of Elliott that he only wanted to be trained by Elliott because he was learning so much from him.  Nevertheless, Burnett reassigned Moore's training and falsely claimed that she did so because Moore refused to work with Elliott.

33.     On or about January 20, 2021, Burnett approached Elliott at the end of his shift, yelling and calling him a "fucking liar."  She shook her finger at his face.  Elliott told her his name was "Scott," not "fucking liar."

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

34.     The next morning Burnett called Elliott into Human Resources (HR) and told him she was putting him on a corrective action.  He asked to transfer to another department, but HR refused. He also requested that HR review the video tape of his interaction with Burnett the day before, when Burnett put her finger in his face.  HR representative Tara McMullen refused his requests.

35.     Thereafter, Burnett stalked Elliott and confronted him in the plant or in the HR office virtually daily.

36.     Approximately a week later, Elliott filed a complaint with Plant Manager Jack Geissinger about Burnett.  He told Geissinger that Burnett was taking these actions against him because she believed him to be gay.

37.     Geissinger referred Elliott's complaint to HR representative Dave Russell.  The complaint was then purportedly investigated by Daryl Birk who, on information and belief, is not an HR representative.

38.     When Burnett learned of Elliott's complaint, she came up to him and said "I'll make you pay for this."

39.     After that day, Burnett made virtually daily complaints to HR about Elliott, so that he had to go to HR to respond almost daily.

40.     By the end of April 2021, Elliott was so stressed as a result of Burnett's harassment that he went to see his doctor, who put him out on a medical leave of absence for stress commencing on April 24, 2021.

41.     Thereafter, Elliott went on short-term disability leave.

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

42.     Elliott had panic attacks at the thought of returning to work under the hostile environment created by Burnett.  As a result, his medical providers advised him to take early retirement for his health, and he retired effective July 5, 2021.

43.     To this day, Elliott is still experiencing panic attacks and nightmares about his treatment at P&G.

**Count I: Discrimination and Constructive Termination of Plaintiff Elliott
In Violation of R.S.Mo. §213.055**

61.     Plaintiff Elliott incorporates by reference all prior paragraphs in this Complaint and restates and realleges the same.

62.     The P&G Defendants are liable for the conduct of their employees which are committed within the scope of employment, especially when one of the actors is a manager.

63.     The P&G defendants, through their agents, Burnett, Braden and Eftink, subjected Elliott to discrimination based on their sexual-stereotyping and perception that he was insufficiently masculine and homosexual.  Elliott would not have been treated differently on account of his non-masculine behavior and gender preference if he had been a woman instead of a man.

64.     As a result of this pervasive and systemic hostile environment discrimination, which included numerous disparate disciplinary counselings and write-ups, Elliott sustained substantial emotional distress and mental anguish.  As a direct result, Elliott was forced to take a medical leave of absence in late April 2021.

65.     As a further direct result, Elliott's medical providers advised him to take early retirement to restore and maintain his physical and mental health, and he did so effective July 5, 2021.

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

66.     A reasonable person in the same or similar circumstances would have felt compelled to retire effective July 5, 2021, like Elliott.

67.     The hostile work environment, disparate discipline and disparate constructive termination of Elliott's employment was motivated, in whole or in part, by unlawful gender discrimination in violation of R.S.Mo. §213.055.

68.     By their actions, the P&G defendants consciously and recklessly disregarded the Elliott's physical and emotional well-being and State-protected rights with evil motive and outrageous conduct.

69.     As a direct and proximate result of the P&G defendants' unlawful conduct, Elliott has and is suffering irreparable injury, including past and future lost pay and benefits, physical and emotional pain, suffering and humiliation, inconvenience, mental anguish, loss of consortium, and loss of enjoyment of life.

WHEREFORE, plaintiff Elliott prays for the following relief:

    a.  An order from the Court reinstating him to his former position with the P&G defendants, with full seniority and associated rights, and without any discipline relating to the false charges with which he was harassed;

    b.  An order enjoining retaliation against Elliott;

    c.  A judgment for lost income and other compensatory damages resulting from Elliott's constructive termination;

    d.  A judgment for punitive damages in a fair and reasonable amount to deter defendants and others from such future conduct;

9

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

e.   A judgment awarding Elliott the costs of this action, prejudgment interest and

reasonable attorney fees; and

f.   A judgment for such other and further relief as the Court deems proper.

**Count II: Intentional Infliction of Emotional Distress of Plaintiff
In Violation of R.S.Mo. §213.055**

70.      Plaintiff Elliott incorporates by reference all prior paragraphs in this Complaint

and restates and realleges the same.

71.      The P&G Defendants are liable for the conduct of their employees which are

committed within the scope of employment, especially when one of the actors is a manager.

72.      Burnett, Braden and Eftink, individually and as agents for the P&G defendants,

systematically harassed Elliott based on their sexual-stereotyping and perception that he was

insufficiently masculine and/or was homosexual.

73.      The above-described conduct of defendants was extreme and outrageous.

74.      The above-described conduct of defendants was intentional or reckless and done

with evil motivation, solely for the purpose of subjecting plaintiff to extreme emotional distress.

75.      As a result of this pervasive and systemic hostile environment harassment,

plaintiff suffered severe emotional distress resulting in bodily harm.

WHEREFORE, plaintiff prays for the following relief:

a.   A judgment for compensatory damages resulting from defendants' intentional

infliction of emotional distress on plaintiff;

b.   A judgment for punitive damages in a fair and reasonable amount to deter

defendants and others from such future conduct; and

c.   A judgment for such other and further relief as the Court deems proper.

Electronically Filed - Cape Girardeau (Jackson) - June 24, 2022 - 01:08 PM

Respectfully Submitted,

WORKERS RIGHTS LAW FIRM LLC
2258 Grissom Drive
St. Louis, Missouri 63146
Phone: (314) 824-0348
Fax:     (314) 828-1029


/s/ Sherrie A. Hall
SHERRIE A. HALL, #40949
sherrieworkersrights@gmail.com
Attorney for Plaintiff

11

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

CIRCUIT COURT OF CAPE GIRARDEAU COUNTY
32nd JUDICIAL CIRCUIT
STATE OF MISSOURI

| | | |
|---|---|---|
| RAYMOND SCOTT ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 22CG-CC00164 |
| THE PROCTER & GAMBLE U.S. | ) | |
| BUSINESS SERVICES COMPANY, | ) | |
| | ) | Division No. 1 |
| and | ) | |
| | ) | |
| THE PROCTER & GAMBLE PAPER | ) | |
| PRODUCTS COMPANY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| and | ) | |
| | ) | |
| HEIDI BURNETT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES EFTINK, | ) | |
| | ) | |
| BRANDON BADER, | ) | |
| | ) | |
| Defendants. | ) | |

**PETITION**

COMES NOW plaintiff, through counsel, and for his causes of action against defendants

The Procter & Gamble U.S. Business Services Company, The Procter & Gamble Paper Products

Company, Heidi Burnett, James Eftink and Brandon Bader states as follows:

**NATURE OF THE ACTION**

In this action, plaintiff alleges gender discrimination and retaliation under the Missouri

Human Rights Act (MHRA) and intentional infliction of emotional distress under Missouri law.

1

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Raymond Scott Elliott (Elliott) is a male citizen.  At all times relevant here, Elliott was employed by Defendants P&G and P&G Paper and resided in Bollinger County.

2.      Defendant The Procter & Gamble U.S. Business Services Company (P&G), is a foreign corporation doing business in Cape Girardeau County.

3.      P&G is an employer, as defined by the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 (7), because at all relevant times P&G employed six (6) or more persons in the State of Missouri.  P & G is an employer with more than 500 employees.

4.      Defendant The Procter & Gamble Paper Products Company (P&G Paper), is a foreign corporation doing business in Cape Girardeau County.

5.      P&G Paper is an employer, as defined by the MHRA, Mo. Rev. Stat. § 213.010 (7), because at all relevant times P&G employed six (6) or more persons in the State of Missouri. P & G is an employer with more than 500 employees.

6.      Defendant Heidi Burnett (Burnett) is a female citizen.  At all times relevant here, Burnett was employed by Defendants P&G and P&G Paper and, on information and belief, resided in Cape Girardeau County, Mo.

7.      Defendant James Eftink (Eftink) is a male citizen.  At all times relevant here, Eftink was employed by Defendants P&G and P&G Paper and, on information and belief, resided in Missouri.

8.      Defendant Brandon Bader (Bader) is a male citizen.  At all times relevant here, Eftink was employed by Defendants P&G and P&G Paper and, on information and belief, resided in Missouri.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

9.     Defendants' unlawful employment practices complained of herein occurred in Cape Girardeau County, Missouri.  Accordingly, venue is appropriate in the Thirty-Second Judicial Circuit.

10.     Plaintiff complains herein of employment practices that are illegal under Missouri law, specifically under the Missouri Human Rights Act, as amended, R.S.Mo. §105.055, and of intentional infliction of emotional distress by all defendants.

11.     Plaintiff dual-filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) on July 29, 2021, complaining of gender discrimination, including harassment, and of being retaliated against for complaining about the harassment.

12.     Plaintiff received his Notice of Termination of Proceedings (Notice) from the MCHR on June 2, 2022.

13.     Plaintiff filed this action within ninety (90) days of receipt of his Notice.

### The Particulars

14.     Elliott was employed by the P&G Defendants from November 17, 1997 to July 5, 2021. At the time he ceased employment, and for approximately 15 years before, Elliott was a Technician for the P&G Defendants.

15.     Elliott is homosexual.  Elliott did not share this fact at work, but his appearance and behavior contradicted the stereotypes of maleness held by his employer and by defendants Burnett, Bader and Efink.

16.     During his employment, Elliott performed the duties and responsibilities of his job in a satisfactory manner.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

17.     Burnett is the manager over the Technicians.  Prior to 2021, on information and belief, Burnett was not aware that Elliott was homosexual and she treated Elliott like the other employees under her supervision.

18.     In or around January 2021, Eftink learned through his mother-in-law, who worked with Elliott's daughter, that Elliott is homosexual.  Eftink and Bader transferred to the team Elliott worked in at around the same time.

19.     On information and belief, at some point in 2021, Eftink shared with Bader and Burnett the information that Elliott is homosexual.

20.     Zachary Carlyle was employed by the P&G Defendants from January 27, 2020 to October 7, 2020 as a Technician in the same department and on the same shift as Elliott.

21.     The P&G Defendants provide Technicians with one week of classroom training and approximately one year of on-the-job training.

22.     Shortly after Carlyle began working for the P&G Defendants, his Team Leader Brandon Bader told him that Elliott was gay, so Carlyle should beware of him.

23.     Elliott was an excellent Technician and was willing to train Carlyle, so Carlyle observed his work closely, often openly following Elliott around.

24.     Later, on information and belief, Carlyle's manager, Burnett, decided Carlyle was gay.

25.     Carlyle was subjected to "secret" discipline, including allegedly being placed on a Last Chance Agreement and allegedly being placed "off-track" for his probationary period. Neither of these issues were ever communicated to Carlyle during his employment with the P&G Defendants.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

26.     Carlyle experienced similar growing pains in the position as other probationary employees did, before and after his tenure.  However, Burnett reacted to Carlyle's growing pains in a much harsher manner than she did to those of other probationary (and non-probationary) employees who she did not perceive to be homosexual.  For example,

a.     Burnett disciplined Carlyle for sleeping on a break, despite admitting that employees are permitted to sleep on breaks.  Other employees Burnett did not perceive as homosexual who were caught sleeping even on *non*-break times were not disciplined in any manner.

b.     Burnett disciplined Carlyle for excessive use of his cell phone while he was monitoring in the Fiber Recovery Control Room.  Team Leader Bader modeled this behavior for Carlyle and was never disciplined for it.  Burnett did not perceive Bader as homosexual.  Thereafter, Carlyle was still *required* to use his cell phone for business purposes, such as responding to texts from manager Burnett, taking photographs to identify potential problems for maintenance, and using the flashlight application to see into corners.

c.     Carlyle bumped a vehicle into one of the self-driving (robotic) trucks that run a designated path.  She disciplined Carlyle for this and cited it as a primary reason for his discharge.  It is not unusual for long-term employees to run into one of the self-driving trucks and not get disciplined; Burnett did not perceive them as homosexual.

d.     Burnett disciplined Carlyle for tardiness, although he was only tardy once, and he called in advance that time.  At least one long-term employee with chronic tardiness was not disciplined for tardiness; Burnett did not perceive this employee as homosexual.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

e.      Carlyle was purportedly fired on October 7, 2020 for a timecard error of one hour that occurred in July 2020.  Other employees Burnett did not perceive as homosexual were merely docked if a timecard error occurred and had the mistake explained to them; they were not disciplined at all.

27.     Burnett was the decision-maker for discharging Carlyle.

28.     Burnett personally fired Carlyle on October 7, 2021.

29.     Moments after firing Carlyle, Burnett observed Carlyle and Elliott speaking on the parking lot of the P&G Defendants.

30.     On October 9, 2021, Elliott's first shift after Carlyle's discharge, Burnett immediately called him into a conference room.  She then began yelling at Elliott about Carlyle, telling him she saw him walk to the gate with Carlyle on October 7, and asking him repeatedly "just what kind of relationship" he had with Carlyle anyway.

31.     Thereafter, Burnett started disciplining Elliott for conduct that was previously acceptable, and was still acceptable to her from people whom she did not believe to be homosexual.

32.     In late 2020, Burnett hired Tyree Moore to replace Carlyle.  Moore stated in front of Elliott that he only wanted to be trained by Elliott because he was learning so much from him. Nevertheless, Burnett reassigned Moore's training and falsely claimed that she did so because Moore refused to work with Elliott.

33.     On or about January 20, 2021, Burnett approached Elliott at the end of his shift, yelling and calling him a "fucking liar."  She shook her finger at his face.  Elliott told her his name was "Scott," not "fucking liar."

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

34.     The next morning Burnett called Elliott into Human Resources (HR) and told him she was putting him on a corrective action.  He asked to transfer to another department, but HR refused. He also requested that HR review the video tape of his interaction with Burnett the day before, when Burnett put her finger in his face.  HR representative Tara McMullen refused his requests.

35.     Thereafter, Burnett stalked Elliott and confronted him in the plant or in the HR office virtually daily.

36.     Approximately a week later, Elliott filed a complaint with Plant Manager Jack Geissinger about Burnett.  He told Geissinger that Burnett was taking these actions against him because she believed him to be gay.

37.     Geissinger referred Elliott's complaint to HR representative Dave Russell.  The complaint was then purportedly investigated by Daryl Birk who, on information and belief, is not an HR representative.

38.     When Burnett learned of Elliott's complaint, she came up to him and said "I'll make you pay for this."

39.     After that day, Burnett made virtually daily complaints to HR about Elliott, so that he had to go to HR to respond almost daily.

40.     By the end of April 2021, Elliott was so stressed as a result of Burnett's harassment that he went to see his doctor, who put him out on a medical leave of absence for stress commencing on April 24, 2021.

41.     Thereafter, Elliott went on short-term disability leave.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

42.     Elliott had panic attacks at the thought of returning to work under the hostile environment created by Burnett.  As a result, his medical providers advised him to take early retirement for his health, and he retired effective July 5, 2021.

43.     To this day, Elliott is still experiencing panic attacks and nightmares about his treatment at P&G.

**Count I: Discrimination and Constructive Termination of Plaintiff Elliott
In Violation of R.S.Mo. §213.055**

61.     Plaintiff Elliott incorporates by reference all prior paragraphs in this Complaint and restates and realleges the same.

62.     The P&G Defendants are liable for the conduct of their employees which are committed within the scope of employment, especially when one of the actors is a manager.

63.     The P&G defendants, through their agents, Burnett, Braden and Eftink, subjected Elliott to discrimination based on their sexual-stereotyping and perception that he was insufficiently masculine and homosexual.  Elliott would not have been treated differently on account of his non-masculine behavior and gender preference if he had been a woman instead of a man.

64.     As a result of this pervasive and systemic hostile environment discrimination, which included numerous disparate disciplinary counselings and write-ups, Elliott sustained substantial emotional distress and mental anguish.  As a direct result, Elliott was forced to take a medical leave of absence in late April 2021.

65.     As a further direct result, Elliott's medical providers advised him to take early retirement to restore and maintain his physical and mental health, and he did so effective July 5, 2021.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

66.     A reasonable person in the same or similar circumstances would have felt compelled to retire effective July 5, 2021, like Elliot.

67.     The hostile work environment, disparate discipline and disparate constructive termination of Elliott's employment was motivated, in whole or in part, by unlawful gender discrimination in violation of R.S.Mo. §213.055.

68.     By their actions, the P&G defendants consciously and recklessly disregarded the Elliott's physical and emotional well-being and State-protected rights with evil motive and outrageous conduct.

69.     As a direct and proximate result of the P&G defendants' unlawful conduct, Elliott has and is suffering irreparable injury, including past and future lost pay and benefits, physical and emotional pain, suffering and humiliation, inconvenience, mental anguish, loss of consortium, and loss of enjoyment of life.

WHEREFORE, plaintiff Elliott prays for the following relief:

a.   An order from the Court reinstating him to his former position with the P&G defendants, with full seniority and associated rights, and without any discipline relating to the false charges with which he was harassed;

b.   An order enjoining retaliation against Elliott;

c.   A judgment for lost income and other compensatory damages resulting from Elliott's constructive termination;

d.   A judgment for punitive damages in a fair and reasonable amount to deter defendants and others from such future conduct;

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

e.   A judgment awarding Elliott the costs of this action, prejudgment interest and

reasonable attorney fees; and

f.   A judgment for such other and further relief as the Court deems proper.

**Count II: Intentional Infliction of Emotional Distress of Plaintiff**
**In Violation of R.S.Mo. §213.055**

70.     Plaintiff Elliott incorporates by reference all prior paragraphs in this Complaint

and restates and realleges the same.

71.     The P&G Defendants are liable for the conduct of their employees which are

committed within the scope of employment, especially when one of the actors is a manager.

72.     Burnett, Braden and Eftink, individually and as agents for the P&G defendants,

systematically harassed Elliott based on their sexual-stereotyping and perception that he was

insufficiently masculine and/or was homosexual.

73.     The above-described conduct of defendants was extreme and outrageous.

74.     The above-described conduct of defendants was intentional or reckless and done

with evil motivation, solely for the purpose of subjecting plaintiff to extreme emotional distress.

75.     As a result of this pervasive and systemic hostile environment harassment,

plaintiff suffered severe emotional distress resulting in bodily harm.

WHEREFORE, plaintiff prays for the following relief:

a.   A judgment for compensatory damages resulting from defendants' intentional

infliction of emotional distress on plaintiff;

b.   A judgment for punitive damages in a fair and reasonable amount to deter

defendants and others from such future conduct; and

c.   A judgment for such other and further relief as the Court deems proper.

Electronically Filed - Cape Girardeau (Jackson) - July 25, 2022 - 02:13 PM

Respectfully Submitted,

WORKERS RIGHTS LAW FIRM LLC
2258 Grissom Drive
St. Louis, Missouri 63146
Phone: (314) 824-0348
Fax:     (314) 828-1029


/s/ Sherrie A. Hall
SHERRIE A. HALL, #40949
sherrieworkersrights@gmail.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2022, the foregoing was filed electronically with the Clerk of the Court, placed with the Summons to be served on the defendants who have yet to be served, and also sent to the attorney for the corporate defendants, Dylan Long, via email.


/s/ Sherrie A. Hall